1  Stella Havkin, #134334
   HAVKIN & SHRAGO
2  Attorneys at Law
   20700 Ventura Boulevard, Suite 328
3  Woodland Hills, CA 91364
   Telephone (818) 999-1568
4  Facsimile  (818) 305-6040
5  stella@havkinanshrago.com

6  Attorneys for Plaintiff Wesley H. Avery, Chapter 7 Trustee

7

8

9                  **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA**

11

12  In re                                  Case No. CV 14-9072-DOC

13  MEIR ASHER,

14                                          **PLAINTIFF WESLEY H. AVERY,**
                 Debtor.                    **CHAPTER 7 TRUSTEE'S APPLICATION**
                                            **FOR ENTRY OF DEFAULT JUDGMENT**
15  _____         **AGAINST DEFENDANT EAST 81ST**
                                            **STREET, LLC BY THE COURT**
16  WESLEY H. AVERY, Chapter 7 Trustee,
                                            **[MEMORANDUM OF POINTS AND**
17                 Plaintiff,               **AUTHORITIES AND REQUEST FOR**
                                            **JUDICIAL NOTICE FILED**
18  vs.                                     **CONCURRENTLY HEREWITH]**

19  EAST 81ST, LLC, a Delaware limited liability   **Date: June 28, 2015**
20  company, ELIYAHU COHEN, an individual,         **Time: 8:30 a.m.**
    ILAN ASHER, an individual,                     **Courtroom: 9D**
21

22                 Defendants.

23  _____

24

25

26

27

28
    C:\Users\Stella Havkin\Documents\AveryAsher\81st\DEFAULTAPPLICATION.doc
                                        1

1   This Application is based on this Notice, the attached declarations of Stella Havkin and

2   Wesley H. Avery, Memorandum of Points and Authorities, and Request for Judicial Notice, and

3   the pleadings, files and other matters that may be presented at the hearing.

4

5

6                                        HAVKIN AND SHRAGO

7   Date: May 28, 2015                          By: /s/ Stella Havkin_____

8                                                   Stella Havkin
                                                    Attorneys for Plaintiff
9                                                   Wesley H. Avery Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Stella Havkin, #134334
   HAVKIN & SHRAGO
2  Attorneys at Law
   20700 Ventura Boulevard, Suite 328
3  Woodland Hills, CA 91364
   Telephone (818) 999-1568
4  Facsimile  (818) 305-6040
5  stella@havkinanshrago.com

6  Attorneys for Plaintiff Wesley H. Avery, Chapter 7 Trustee

7

8

9              UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA

11

12 In re                          Case No. CV 14-9072-DOC

13 MEIR ASHER,

14          Debtor.              **PLAINTIFF WESLEY H. AVERY,
                                 CHAPTER 7 TRUSTEE'S
15 ───────────────────────       MEMORANDUM OF POINTS AND
                                 AUTHORITIES IN SUPPORT OF
16 WESLEY H. AVERY, Chapter 7 Trustee,  APPLICATION FOR ENTRY OF
                                 DEFAULT JUDGMENT AGAINST
17          Plaintiff,           DEFENDANT EAST 81ST STREET, LLC
                                 BY THE COURT; DECLARATION OF
18 vs.                           STELLA HAVKIN AND WESLEY H.
                                 AVERY IN SUPORT THEREOF**
19 EAST 81ST, LLC, a Delaware limited liability
20 company, ELIYAHU COHEN, an individual,   **[REQUEST FOR JUDICIAL NOTICE
   ILAN ASHER, an individual,    FILED CONCURRENTLY HEREWITH]**
21
22          Defendants.          **Date: June 28, 2015
                                 Time: 8:30 a.m.
23                               Courtroom: 9D**

24

25

26

27

28
   C:\Users\Stella Havkin\Documents\AveryAsher\81st\EAST81DEFAULTdc.doc
                                 1
   MEMORANDUM IN SUPPORT OF APPLICATION FOR ENTYR OF DEFAULT JUDGMENT3

TO THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT COURT JUDGE, ALL INTERESTED PARTIES AND THEIR ATTONREYS OF RECORD:

Plaintiff Wesley H. Avery, Chapter 7 Trustee ("Trustee") hereby submits his memorandum of points and authorities in support of his Application for Entry of Default Judgment against Defendant East 81st Street, LLC by the Court based on the following:

## I.

### STATEMENT OF FACTS AND GENERAL ALLEGATIONS

1. This adversary proceeding relates to the Chapter 7 case of In re: Meir Asher 2:12-bk-54302-RN and adversary case No. 2:12-ap-01163-RN of Avery v. Asher, now pending in the United States Bankruptcy Court for the Central District of California.   The parties by way of stipulation removed this matter in the above-referenced bankruptcy case this Court.

2. Plaintiff is the duly appointed and acting Chapter 7 Trustee of the bankruptcy estate (the "Estate") of the above-captioned Debtor Meir Asher, (the "Debtor").   See, Declaration of Wesley H. Avery ("Avery Declaration"), ¶2.

3. Defendant East 81ST, LLC, is a Delaware limited liability company ("East 81st, LLC ").   East 81st, LLC was properly served with the Trustee's complaint.   It failed to answer the complaint and the Bankruptcy Court entered default against East 81st, LLC on October 23, 2013. A true and correct copy of the entry of default is attached to the Request for Judicial Notice as Exhibit "1."

4. Defendant Eliyahu Cohen is the Debtor's business partner ("Cohen").   A true and correct copy of the excerpts from the deposition of Eliyahu Cohen is attached to the Declaration of Stella Havkin (Havkin Declaration") as Exhibit "1."

5. Defendant Ilan Asher is the brother of Debtor Meir Asher.

6.   The Trustee asserts that at the time of the filing of the Debtor's Chapter 7 Bankruptcy case, the Debtor was the equitable owner of the following real property: A condominium located at 215 East 81st Penthouse "B", New York, New York ("The Penthouse").

7.   On or about February 14, 2006, the Debtor acquired The Penthouse for $450,000.00, and paid for same with two checks from his personal checking account at Comerica Bank, Account No. xxx7522, in the amounts of $200,000.00, (check number 1027) and $250,000.00, (check number 1031), respectively and thereafter took title to The Penthouse either in his name or in Defendant East 81st, LLC's name.   The Debtor specifically stated in the memorandum on the checks that the checks are made out for the purchase of the condominium.   The checks were produced to Trustee's counsel through a subpoena from Barry Fisher, counsel for Debtor's former wife Sigalit Cohen in the divorce proceedings.   True and correct copies of the checks are attached to the Havkin Declaration as Exhibit "2."

8.   On November 9, 2009, Debtor through East 81st Street, LLC as a conduit transferred his valuable interests in The Penthouse to Defendants Cohen and Ilan Asher **for no money** and for an alleged **"credit balance"** of $450,000.00, which the same amount that the Debtor paid for The Penthouse in 2006 ("The 2009 Transfer.")   A true and correct copy of the transfer document which was produced to Trustee's counsel in discovery is attached to the Havkin Declaration as Exhibit "3."   Defendants failed to provide any proof any such "credit balance" owed by the Debtor to them.   See, Havkin Declaration, ¶4.   Also, the parties filed their Joint Pretrial Conference Report which is attached to the Havkin Declaration as Exhibit "4" in which Defendants state that they will not be producing any documents to prove the alleged credit balance.

9.   The Debtor failed list his interest in the Penthouse, in his bankruptcy schedules and further failed to list his transfer of The Penthouse to Defendants Cohen and Ilan Asher in his Statement of Financial Affairs at the time he filed his bankruptcy petition on October 25, 2011.

1  The Debtor's Schedule "A" and Statement of Affairs are attached to the Request for Judicial Notice

2  as Exhibit "2" filed concurrently herewith.

3          10.      At the time that Debtor acquired The Penthouse from East 81st Street, LLC

4  and at the time of the transfer of the Penthouse from the Debtor to Defendants Cohen and Ilan

5  Asher via East 81st, LLC, the Debtor was embroiled in a contentious divorce case with his former

6  wife Sigalit Cohen.  The Divorce centered upon the Debtor's failure to disclose the true nature and

7  extent of his real properties, businesses and his identity swap with Defendant Ilan Asher at the

8  Department of Motor Vehicles.  A true and correct copy of the Docket of the Divorce case is

9  attached to the Request for Judicial Notice as Exhibit "3."  The Debtor and his brother have

10  admitted to having obtained a fraudulent driver's license from the DMV.  True and correct excerpts

11  from the deposition of Meir Asher and trial testimony of Ilan Asher are attached to the Havkin

12  Declaration as Exhibit "5."  Further, at the time that the Debtor acquired the Penthouse, he was

13  defending a criminal matter involving Department of Motor Vehicles fraud regarding the above-

14  referenced identity swap.  A true and correct copy of the Complaint by the People of the State of

15  California against the Debtor is attached to the Request for Judicial Notice as Exhibit "4."

16          11.     At the time of the 2009 Transfer, the State of Nevada was prosecuting the Debtor for

17  restitution for having tendered bad checks to two Las Vegas casinos.  True and correct copies of the

18  dockets of the State of Nevada cases against the Debtor are attached to the Request for Judicial

19  Notice as Exhibit "5."  Further, weeks before the 2009 Transfer, the Desert Palace, Inc. casino had

20  a judgment entered against the Debtor and his aliases for over $3,000,000.   A true and correct copy

21  of the September 22, 2009 Judgment is attached to the Request for Judicial Notice as Exhibit "6."

22          12.     At the time of the 2009 Transfer, the Penthouse was worth in excess of $450,000.

23  See, Avery Declaration, ¶3.

24  / / /

4

## II.

### TRUSTEE'S COMPLAINT

The Trustee's complaint seeks to avoid the 2009 Transfer by avoiding the transfer from the Debtor via Defendant East 81st, LLC to Defendants Cohen and Ilan Asher, to avoid the document recorded in furtherance of the 2009 Transfer to the benefit of the Estate which is believed to be a deed and/or to have its value which is currently clouded by the Defendants Cohen and Ilan Asher's deed assigned to the Trustee.

In the First Claim for Relief, the Trustee seeks to avoid the transfer of The Penthouse from the Debtor via his conduit East 81st, LLC to Defendants Cohen and Ilan Asher pursuant to 11 U.S.C. §548(a)(1)(A). The Complaint asserts that the 2009 Transfer made by the Debtor with actual intent to hinder, delay, or defraud creditors. This is because at that time of the 2009 Transfer, the Debtor was still involved in divorce proceedings with his former wife Sigalit Cohen and with two Las Vegas casinos for having written bad checks in excess of $3,500,000. East 81st, LLC did not receive any consideration for the 2009 Transfer from Defendants Eliyahu Cohen and Ilan Asher or from the Debtor as evident from the transfer documents. See, Exhibit "2" to the Havkin Declaration. Rather, East 81st, LLC under self-evident instructions from the Debtor transferred the Debtor's interest in The Penthouse for "credit." See, Exhibit "2" to Havkin Declaration. By reason thereof, the 2009 Transfer by East 81st, LLC of the Debtor's interest is avoidable pursuant to 11 U.S.C. §548(a)(1)(A). Once avoided, pursuant to 11 U.S.C. §551, the transfer of The Penthouse or its value by East 81st, LLC, should be assigned to the Trustee to be preserved for the benefit of the Estate.

In the second claim for relief, the Complaint seeks recovery of avoided transfer pursuant to 11 U.S.C. §550. Through this Motion for Default Judgment, the Trustee seeks the recovery of the 2009 Transfer from East 81st Street LLC pursuant to 11 U.S.C. §550.

In the third claim for relief the Trustee seeks to quiet title to The Penthouse asserting that the Defendants claim to right, title, estate, lien, or interest whatsoever in the Penthouse is without merit and that the Trustee is entitled to avoid the transfers to Defendants and have them, or their values, assigned to the Trustee.

In the fourth claim for relief, the Complaint seeks an adjudication that The Penthouse which was transferred in 2009 be preserved for the benefit of the Estate, and that the Trustee holds all rights to The Penthouse free and clear of any interests claimed by East 81st Street, LLC.

### III.

### THE TRUSTEE MAY AVOID THE 2009 TRANSFER BY THE DEBTOR VIA HIS CONDUIT DEFENDANT EAST 81ST STREET, LLC

11 U.S.C. Sections 544 through 553 of the Bankruptcy Code grant a Trustee the power to avoid certain transfers and recover assets for the benefit of a bankruptcy estate, including fraudulent transfers.

11 U.S.C. §548(a)(1)(A), in pertinent part, states:

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or whether the transfer or obligation was to an insider.

6

It is usually difficult to find good, non-circumstantial evidence of "actual intent to hinder, delay or defraud."  People do not tend to admit such evil intent, and other hard evidence of intent is hard to come by.  *In re Acequia, Inc.*, 34 F.3rd 800, 805-806 (9th Cir. 1994.)  Recognizing this, the Uniform Fraudulent Transfer Act ("UFTA") includes a list of conditions or events that are suggestive of fraudulent intent.  These are referred to as "badges of fraud."  *In re Acequia, supra*, at 806.

UFTA §4(b) provides that "in determining actual intent under subsection (a)(1), consideration may be given, among other factors, to the following, whether:

1. The transfer or obligation was to an insider; 2. The debtor retained possession or control of the property transferred after the transfer; 3. The transfer or obligation was disclosed or concealed; 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; 5. The transfer was of substantially all the debtor's assets; 6. The debtor absconded; 7. The debtor removed or concealed assets; 8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

In addition, pursuant to 11 U.S.C. §548 and the UFTA, a Trustee may avoid a transfer if the transfer was made by the Debtor with actual intent to hinder, delay **or** defraud creditors.  Proof of insolvency is not necessary to a determination of actual intent.  March, Ahart & Shapiro, CAL PRAC. GUIDE: BANKRUPTCY (The Rutter Group) §21:1027.  The use of the word "or" means if done intentionally, only one of the actions is required to prove a fraudulent transfer.  *BFP v. Resolution Trust Corp.*, 511 U.S.C. 531, 114 S.Ct. 1757 (1994.)

In addition, among the more common circumstantial indicators of fraudulent intent at the time of the transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable

1    indebtedness on the part of the debtor; (4) a special relationship between the debtor and the

2    transferee; and, after the transfer, (5) retention by the debtor of the property involved in the

3    putative transfer.   *In re Acequia, Inc.,* 34 F.3d 800, 806 (9th Cir. 1994.)

4    Once the Trustee establishes a confluence of several of the badges of fraud, the Trustee

5    is entitled to a presumption that the challenged transfer was made with actual intent to hinder,

6

7    delay or defraud creditors, the burden shifts to the transferee to prove some legitimate supervening

8    purposed for the fraudulent transfer.   *In re Acequia, Inc.*, *supra*, 805-806; *BFP v. Resolution*

9    *Trust Corp.*, 511 U.S.C. 531, 541, 114 S.Ct. 1757, 1763.

10   East 81st, LLC was not a bona fide purchaser for value.  It never purchased The Penthouse

11   from the Debtor rather the Debtor purchased The Penthouse from East 81st, LLC in 2006.   East

12   81st, LLC as a conduit for the Debtor's fraudulent conduct.  It transferred The Penthouse to the

13   Debtor's brother Ilan Asher and his business partner Eliyahu Cohen.  See, excerpt from the

14   deposition of Eliyahu Cohen wherein he asserts that he is the Debtor's business partner.   There

15   was no legitimate reason to transfer The Penthouse from the Debtor to Defendants Eliyahu Cohen

16

17   and Ilan Asher.  This is especially since a transfer between the debtor and family or a friend is a

18   common indicia of fraudulent intent.  *Kaisha v. Dodson*, 423 B.R. 888 (ND CA 2010); *In re*

19   *Acequia, Inc.*, *supra*, 805-806.

20                                                IV.

21

22   **THE DEBTOR UTILIZING DEFENDANT EAST 81ST, LLC AS A CONDUIT FOR
     INTENTIONAL CONDUCT.  THE TRANSFER OF THE PENTHOUSE WAS DESIGNED**

23   **TO DEFAUD THE DEBTOR'S CREDITORS AND HIS CONDUCT MEETS THE
     BADGES OF FRAUD.**

24

25   The Trustee requests that this Court find that the 2009 Transfer by the Debtor via East 81st,

26   LLC to the Debtor's insiders, his brother Ilan Asher and his partner, Eliyahu Cohen for no

27   consideration to be fraudulent and require the transfer of the interest back to the Trustee. The facts

28   that support the "badges of fraud" are:

                                                8

1)   The transfer took place within the two year statutory period prior to the filing of the Chapter 7 Bankruptcy on October 21, 2011.  See, Exhibit "2" to Havkin Declaration;

2)   The transfer was to the Debtor's insiders - his brother Ilan Asher and his partner Eliyahu Cohen;

3)   Defendants have failed to provide any evidence of consideration when asked to do so through discovery.  See, Havkin Declaration, ¶4;

4)   The Debtor failed to list his interest in East 81st, LLC, in his bankruptcy schedules. See, Exhibit "2" to the Request for Judicial Notice;

5)   The Debtor failed to list his transfer of The Penthouse via East 81st, LLC to Defendants Cohen and Ilan Asher in his Statement of Financial Affairs at the time he filed his bankruptcy petition and schedules on October 25, 2011.  See, Exhibit "2" to the Request for Judicial Notice;

6)   At the time of the 2009 Transfer, the Debtor was embroiled in a contentious divorce case with his former wife Sigalit Cohen, that centered upon his failure to disclose the true nature and extent of his real properties, businesses, income and his identity swap with Defendant Ilan Asher.  See, Exhibit "3" to the Request for Judicial Notice.  Further, in or around the time that the Debtor purchased his interest in The Penthouse, he was defending a criminal matter involving DMV fraud regarding the above-referenced identity swap.  See, Exhibit "4" to the Request for Judicial Notice.  Moreover, at the time of the 2009 transfer of the New York Penthouse to Defendants Cohen and Ilan Asher, the State of Nevada was prosecuting the Debtor for restitution for having tendered bad checks for over $3,500,000 to two Las Vegas casinos.  See, Exhibit "5" to the Request for Judicial Notice.  Further, weeks before the 2009 Transfer, the Desert Palace, Inc. casino had a judgment entered against the Debtor and his aliases for over $3,000,000.   A true and correct copy of the September 22, 2009 Judgment is attached to the Request for Judicial Notice as Exhibit "6."

7)   The Trustee had issued discovery to Defendants Ilan Asher and Eliyahu Cohen to produce evidence of consideration that they provided to the Debtor or East 81st LLC for the transfer of The Penthouse.  No documents demonstrating consideration for "the credit" were produced.  No documents can now be produced as discovery has closed.  See, Exhibits "2" and "3" to Havkin Declaration.

8)   Throughout his divorce case and in the Bankruptcy case, the Debtor hid his interest in a valuable company, TSF T-Shirt and Printing, LLC ("TSF") which is supposedly owned by his brother and Defendant Eliyahu Cohen's brother.  See, schedule B of the Debtor's Bankruptcy Schedules which is attached to the Request for Judicial Notice as Exhibit "7."   Also, see excerpts of the Deposition of Meir Asher which are attached to the Havkin Declaration as Exhibit "5."  While hiding his interest in TSF, the Debtor testified in District Court before the Honorable Dale Fischer in 2006 in connection with a case against TSF, that he held an ownership in same.  Since the Debtor was seeking a benefit in the 2006 District Court, the Debtor testified as to his true relationship with TSF.  See, excerpts from the transcript of the hearing before Honorable Dale Fisher wherein the Debtor admitted ownership of an asset which he claims to have never owned.  The excerpts are attached to the Request for Judicial Notice as Exhibit "8."   The Debtor's failure to reveal his true assets is another "badge of fraud" that is in support of Debtor's fraudulent intent.

9)   In his Bankruptcy Schedules, Schedule B and I, the Debtor claimed that he owns virtually nothing and is unemployed.  See, Exhibits "6" and "8" to the Request for Judicial Notice.  Exhibit "9" contains a true and correct copy of the Debtor's Schedule "I" regarding his income.  While the Debtor claimed to be unemployed as of 2011, yet a few months before the filing of the Bankruptcy case, he executed a $6,600,000 million dollar subordination agreement regarding refinancing of a real property which has also been hidden under the Debtor's brother's name.  A true and correct copy of the subordination agreement is attached to the Havkin Declaration as

1  Exhibit "6."

2      All of these facts and circumstances surrounding the Debtor's conduct demonstrate the

3  requisite "badges of fraud" which prove that the Debtor's actual intent in transferring The

4  Penthouse via East 81 Street, LLC to his insiders, Defendants Ilan Asher and Cohen for "credit"

5  was for fraudulent reasons of hinder, delay and fraud upon his creditors.  The Debtor, while in debt

6  to his former wife and in pursuit by both the State of Nevada for restitution and civilly by two

7  casinos for the issuance of bad checks, transferred The Penthouse to his brother and business

8  partner for "credit."  When asked to provide any documentation that the Debtor actually owed

9  money to his insiders, no such proof was produced.   Considering all of the facts and circumstances

10  surrounding the Debtor, his insider brother Ilan Asher and his business partner, the 2009 Transfer

11  meets at least several of the "badges of fraud" if not all proving the Debtor's actual intent to

12  defraud.  Based on the foregoing the Plaintiff respectfully requests that the Court enter a Default

13  Judgment against Defendant East 81st Street, LLC.

14   

15                  HAVKIN AND SHRAGO

16   

17  Date: May 29, 2015             By: /s/ Stella Havkin_____

18                       Stella Havkin

19                       Attorneys for Plaintiff

                     Wesley H. Avery Chapter 7 Trustee

## DECLARATION OF WESLEY H. AVERY

I, Wesley H. Avery, declare:

1.      I am the duly appointed Chapter 7 Trustee for the Estate of Debtor Meir Asher in the Bankruptcy Case 2:11-bk-54302-RN and all related cases.  I am also a licensed attorney by all the Courts of the State of California and this Court.  Further, I am a licensed California Real Estate Broker.  All of the facts stated herein are true and correct to the best of my personal knowledge and if called as a witness could and would competently testify thereto.

2.      Based on my experience as a Trustee, as a real estate broker, and based on my review of the relevant documents, I determined that at the time of the 2009 Transfer, the Penthouse was worth in excess of $450,000.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.  Executed this 27th day of May, 2015 at City of Commerce, California.

_Wesley Avery_
Wesley H. Avery

### DECLARATION OF STELLA HAVKIN

I, Stella Havkin, declare:

1.      My firm is counsel to Wesley H. Avery, Chapter 7 Trustee for the Estate of Meir Asher, the Debtor in this case.  I am an attorney at law licensed to practice before all of the courts of the State of California and this Court.  All of the facts stated herein are true and correct to the best of my personal knowledge and if called as a witness could and would competently testify thereto.

2.   A true and correct copy of the excerpt from the deposition of Eliyahu Cohen is attached hereto as Exhibit "1."

3.   I received Debtor's checks made out from his personal checking account at Comerica Bank, Account No. xxx7522, in the amounts of $200,000.00, (check number 1027) and $250,000.00, (check number 1031) through a subpoena that I issued to Barry Fischer, counsel for Debtor's former wife Sigalit Cohen in the divorce proceedings.  True and correct copies of the checks that are attached hereto as Exhibit "2."

4.   True and correct copies of the transfer documents which were produced to me in discovery by Defendant Eliyahu Cohen are attached hereto as Exhibit "3."  Defendants have failed to provide any proof whatsoever of any such "credit balance" owed by the Debtor to Defendants.   Further, the parties filed the Joint Pretrial Conference Report which is attached hereto as Exhibit "4" in which Defendants fail to list any documents which they will be producing at trial in support of the alleged credit balance.

5.   True and correct excerpts from the deposition of Meir Asher and from trial testimony of Ilan Asher in which the Debtor and his brother admit to having obtained a fraudulent driver's license from the Department of Motor Vehicles are attached hereto as Exhibit "5."

6.   In connection with discovery in the related cases involving the Debtor, I obtained

1    from Comerica Bank through a subpoena, a subordination agreement which was executed by the

2    Debtor in May, 2011.  A true and correct copy of the subordination agreement is attached hereto as

3    Exhibit "6."

4        I declare under penalty of perjury under the laws of United States of America that the

5    foregoing is true and correct.  Executed this 28th day of May, 2015 at Woodland Hills, California.

6

7

8                                                    _____
                                                     Stella Havkin
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF  APPLICATION FOR ENTYR OF DEFAULT JUDGMENT BY COURT

**EXHIBIT 1**

1              UNITED STATES BANKRUPTCY COURT

2      CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

3

4
       IN RE                        )
5                                   )
          MEIR ASHER,               )  CASE NO. 2:11-BK-
6                                   )  54302-RN
          DEBTOR.                   )
7      _____)
                                    )
8      WESLEY H. AVERY, CHAPTER 7 TRUSTEE)
                                    )
9              PLAINTIFF,           )
                                    )
10     VS.                          )
                                    )
11     EAST 81ST, LLC, A DELAWARE LIMITED)
       LIABILITY COMPANY, ELIYAHU COHEN, )
12     AN INDIVIDUAL, ILAN ASHER, AN     )
       INDIVIDUAL,                  )
13                                  )
              DEFENDANTS.           )
14     - - - - - - - - - - - - - - - - - - -

15

16

17

18        VIDEOTAPED DEPOSITION OF ELIYAHU KAR COHEN

19             TUESDAY, SEPTEMBER 2, 2014.

20

21

22

23

24     FILE NO. 41089

25     REPORTED BY:  DORAL LARSON, C.S.R. 13524

## Page 18

```
        1    A. Yeah.
        2    Q. Okay. So what do you do in the garment industry?
        3    A. Manage a shop.
        4    Q. Manage a shop. When you say "manage," what does
10:14:14 5   that mean?
        6    A. Manage --
        7    Q. I don't know much about the garment industry, so
        8    I don't know what manage means. Do you mean, like, open
        9    and close the shop? Or do you actually buy goods and
       10    design --
       11    A. People come, people go with design we produce.
       12    Q. So you design and produce garments?
       13    A. (No audible response).
       14    Q. What type of garments?
10:14:30 15  A. T-shirts.
       16    Q. Is that mainly the t-shirt --
       17    A. Uh-hum.
       18    Q. Were you in business with Meir Asher producing
       19    and designing t-shirts and garments?
10:14:35 20  A. Are we in business?
       21    Q. Yeah. Were you ever working with him design- --
       22    A. We were, yeah, of course.
       23    Q. Okay. What years were you in business with him?
       24    A. Probably four, five years ago.
10:14:47 25  Q. Four or five years ago. So 2008, '09, '10 -- oh,
```

## Page 19

```
        1    no, it's 2014 times passing. 2010?
        2    A. '09.
        3    Q. 2009?
        4    A. '09, '10.
10:14:57 5   Q. '09, '10. Are you in business with him
        6    currently?
        7    A. No -- I mean, I am. I have businesses with him,
        8    yeah.
        9    Q. What businesses do have you with him?
10:15:02 10  A. Garments.
       11    Q. Okay. Are they -- same thing, t-shirt
       12    manufacturing? Producing?
       13    A. This one is also bottoms, t-shirts, yeah.
       14    Q. Okay. Does he have his own businesses that do
       15    this?
       16    A. I don't know about his own businesses, but the
       17    one he has with me.
       18    Q. Okay. What business does he have with you
       19    currently? What's the name of that business?
       20    A. The name is Save Khaki.
       21    Q. Save Khaki? S-a-v-e? And then, Khaki, like the
       22    Khaki color?
       23    A. Yeah.
       24    Q. Where are those businesses located?
10:15:29 25  A. In L.A.
```

## Page 20

```
        1    Q. In LA? Do they have any other offices anywhere
        2    else?
        3    A. There is a retail store in New York.
        4    Q. One retail store in New York?
10:15:39 5   A. Two. Maybe three possibly going soon.
        6    Q. Sounds like it's doing well?
        7       MR. KREIS: Objection. That's -- that's not
        8    a question, and I don't -- I thought this was a
        9    deposition and a particular adversary proceeding
10:15:55 10  involving East 81 --
       11       MR. NICOL: Well --
       12       MR. KREIS: -- this is not a 2004 exam.
       13    There's no adversary proceeding pending as to Save Khaki
       14    or any other thing with the name Khaki in it.
10:16:05 15     MS. NICOL: What's your -- John, there's --
       16    excuse me, Mr. Kreis. I'm allowed to go into his
       17    background, how he works with Meir, how this money --
       18    what businesses they have. I need to find out what this
       19    exchange of this money of over a million dollars is all
10:16:19 20  about.
       21       MR. KREIS: Well, I object to your -- I
       22    object to your assessment of how far you can go, for
       23    starters. You can certainly ask him questions about
       24    East 81. You can certainly ask him some preliminary
10:16:30 25  questions about his relationship with Meir Asher, but I
```

## Page 21

```
        1    think you're now using this as a folcom (phonetic) to go
        2    into areas that are outside the four corners of
        3    this adversary proceeding.
        4       MS. NICOL: Are you instructing him not to
10:16:42 5   answer?
        6       MR. KREIS: Not yet.
        7    BY MS. NICOL:
        8    Q. All right. So you currently have this Save Khaki
        9    business. Are you partners in that business?
10:16:51 10  A. Yes.
       11    Q. Okay. 50/50 partners?
       12    A. No.
       13    Q. Well, what percentage do you have?
       14    A. 25.
10:16:56 15  Q. You have 25?
       16    A. Uh-hum.
       17    Q. And he has 75?
       18    A. 25.
       19    Q. 25. And there's two other partners, I imagine?
       20    A. Exactly.
       21    Q. Okay.
       22       THE DEPOSITION OFFICER: Just, can you guys
       23    wait for the full question and answer --
       24       MS. NICOL: Yep --
       25       THE DEPOSITION OFFICER: You're talking on
```

**EXHIBIT 2**





| | |
|---|---|
| Date: | 2006/03/28 |
| CID: | 0886-04AUG08 |
| DIN: | 612043440 |
| Acct#: | 8000824097 |
| Ck#: | 1031 |
| Amt: | $ 250,000.00 |

Page 27 of 173

21



Date:        2006/02/23
CID:         0886-04AUG08
DIN:         613043640
Acct#:       8000824097
Ck#:         1027
Amt:         $ 200,000.00

**EXHIBIT 3**

Our File No. 4514B

### CLOSING STATEMENT

East 81st LLC
Sponsor/Seller
to

Eliyahu Cohen and Ilan Asher

Premises: Unit #PHB
215 East 81st Street
New York, New York

Closing took place at the offices of
Michael Kane, Esq.
240 West 35th Street, Suite 504
New York, NY 10001

Date of Closing: November 9, 2009

---------------------------------------------------------------

**P R E S E N T :**  East 81st LLC
By: Charles Epstein, Esq.
Seller

Charles Epstein, Esq.
By:  Charles Epstein, Esq.
Attorney for Seller

Michael H. Kane, Esq.
Attorney for Purchaser

Fidelity National Title Insurance Company
Of New York
By:  Larry Priola
Title Closer

## COMPUTATION

### CREDITS/SELLERS:

Purchase Price ............... $450,000.00

Real Estate Taxes -
(One half balance 2nd quarter
(2009/10 Property Taxes) ..... $    674.20

TOTAL CREDIT SELLER:                                $450,674.20

### CREDIT/PURCHASER:

Deposit Paid by Purchaser..........              $(450,000.00)

Credit Purchaser                       $   450,000.00

Total Due Seller at Closing            $         674.20
(By Michael Kane IOLA check #2150

### BALANCE PAID AS FOLLOWS:

**TOTAL Paid to Seller**...................   $         674.21

2